# Jamison's Estate.

*Wills—Precatory words—Construction—Intention.*

A brother and sister made wills in favor of each other. The sister anticipating the death of the brother, left a writing which stated "I am not responsible for the passing away of my brother ......but I will know that his life is gone before mine passes, so I will have inherited his estate and the terms of my will stand." Testatrix was, however, survived by said brother, whose name was Samuel, and by another brother, John. Several writings directed to John were found, requesting him to make certain dispositions of property. The register of wills admitted to probate the will of testatrix leaving her entire estate to her brother Samuel, and refused probate of the writings directed to her brother John. The Orphans' Court affirmed the decree of the register. *Held,* that as the writings directed to John were only intended to take effect provided the brother Samuel predeceased testatrix, and were merely precatory in character, they never took effect as a will, and the decree was affirmed.

Argued Feb. 8, 1916. Appeals, Nos. 343 to 347 inclusive, Jan. T., 1915, by Gertrude H. Tyson, Martha H. Young, Ella M. Young, Lucy Nice, Ida Jamison and Emma Harrar, from decree of O. C. Delaware Co., dismissing appeals from decree of Register of Wills, in Estate of Jane Jamison, Deceased. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Appeal from decree of register of wills refusing to admit to probate certain documents alleged to constitute part of the will of Jane Jamison, deceased. Before BROOMALL, J.

The opinion of the Supreme Court states the facts.

The court dismissed the appeals. Gertrude H. Tyson, Martha H. Young, Ella M. Young, Lucy Nice, Ida Jamison and Emma Harrar, appealed.

*Error assigned* was the decree of the court.

*R. Stuart Smith,* with him *Franklin S. Edmonds* and *W. Roger Fronefield,* for appellants.—The writings in question are testamentary because the testatrix clearly intended that the disposition of her property contained therein should not become operative until after her death and chose the best way she believed possible to obtain this result: Pritchett's Est., 9 Pa. C. C. 600; Beaumont's Est., 214 Pa. 445; Harrison's Est., 196 Pa. 576; Knox's Est., 131 Pa. 220; Gaston's Est., 188 Pa. 374.

*Joseph H. Shoemaker,* with him *William I. Schaffer,* for John Jamison, appellee.—Whether the writings be considered codicils or not they were to take effect only in the event of the testatrix surviving her brother Samuel and he having survived her, they are inoperative: Morrow's App., 116 Pa. 440; Todd's Will Case, 2 W. & S. 145; Jeffries's Est., 18 Pa. Superior Ct. 439; Hamilton's Est., 74 Pa. 69.

The two writings in question by which the testatrix requests that certain persons shall have the benefit of certain parts of her estate are inconsistent with her probated will and the writing in which she said her will was to stand, by the terms of both of which she gave all her estate to her brother Samuel; all three writings bearing the same date, August 30, 1913, and there being nothing to show which of the three was executed last, all three are void and the probated will must therefore stand unaffected by the two writings: Phipps v. Anglesea, 7 Brown's Par. Cas. 443; Loftus v. Stoney, 17 Irish Ch. Rep. 178.

The testatrix by her probated will, which she directed by one of the writings of August 30, 1913, should stand as her last will, disposed of all her estate to her brother Samuel, and by the two writings in question she merely made requests, which, in view of the previous absolute disposition to Samuel, would not have been binding on him even if the requests had been made of him, but the requests were made of John and not of him: Burt, et al.,

v. Herron's Executors, 66 Pa. 400; Bowlby v. Thunder, 105 Pa. 173; Hopkins v. Glunt, et al., 111 Pa. 287.

The testatrix was not ignorant of or mistaken about the legal formalities necessary for the making of a valid codicil, but assuming that she was, and if it had not been for her ignorance or mistake she may have made bequests as indicated in the two writings in question, yet the writings and surrounding circumstances show that she did not in fact make or intend to make positive bequests by either of those writings: Barker, et al., v. Comins, et al., 110 Mass. 488; Attorney General v. Lloyd, 1 Ves. Sr. 32; Whelen's Est., 175 Pa. 23; Brick's Est., 20 W. N. C. 499; Doe, et al., v. Hicks, 8 Bing. (Eng.) 475, cited in Padelford's Est., 190 Pa. 35; Sheetz's App., 82 Pa. 213.

OPINION BY MR. JUSTICE POTTER, April 17, 1916:

From the record in this case, it appears that Jane Jamison and her brother Samuel resided together for several years at Radnor, Pennsylvania, and that they executed wills which were in terms substantially the same. By her will, dated March 3, 1905, Jane gave her entire estate to her brother Samuel if he survived her, and, if he did not so survive, then to her executors in trust to pay the income to her brother John Jamison for life, and after his death to pay the income to certain other beneficiaries. Samuel Jamison by his will, dated March 2, 1905, gave all his estate to his sister Jane if she survived him, and, if not, then to his executors in trust for the same beneficiaries as were named in the will of his sister Jane. On August 31, 1913, Jane Jamison committed suicide, and Samuel apparently made an unsuccessful attempt to do so, but he survived his sister, and her will, dated March 3, 1905, was duly probated. On the day preceding her death, and evidently in anticipation thereof, Jane Jamison placed in a handbag certain letters and documents signed by her, and directed the delivery of the handbag with its contents to her

friend Gertrude H. Tyson, immediately after her death.
One of these papers, which indicated clearly that she ex-
pected her brother Samuel to die before she did, was as
follows:

"30 August, 1913.

"I am not responsible for the passing away of my
brother Samuel Jamison, but I will know that his life
is gone before mine passes, so I will have inherited his
estate, and the terms of my will stand. It is in No. 1849
—Radnor Fidelity Trust Company.   JANE JAMISON."

Several of these writings were offered for probate as
codicils to the will of Jane Jamison, and were refused
by the register of wills.   From the decree of the Or-
phans' Court sustaining that refusal this appeal has been
taken by parties in interest.   By their assignments of
error they raise the question of the testamentary char-
acter of two of these writings.   The first of them is as
follows:

"I request that my brother John Jamison give my
South Pittsburgh Water Works bonds $3,000 to Ida
Jamison, Perkasie, Pa.   I have allowed her the interest
$150 for a few years for her rent, otherwise she and her
sister Fanny would have no home, they pay $10 a month
rent, the interest allows them a little over for other ex-
penses.

"To allow Martha Young, 5525 Morris Street, Ger-
mantown, the interest on my Penn. Coal Storage and
Market Company stock $226 a year, valued at $5,650 if
she dies before her mother, let her mother have the in-
terest at the death of her mother the principal is to be
given to the College of Physicians, Philadelphia, Pa., to
found the James Tyson Fund for the purchase of books.
If she outlives her mother then at her death the principal
is to go to The College of Physicians for James Tyson
Fund.

"Interest on My Commercial Trust to Lucy Nice, 1803
North 7th Street, Philadelphia.

"Interest on my American Gas Stock to Emma Harrar,

Devon, Pa. To give my College Club bonds to Frances
Tyson, 1506 Spruce Street. To see that Lucy Nice, 1803
North 7th Street, is always comfortable. My money on
deposit at 10th & Walnut—the Saving Fund Society to
Gertrude Harrar Tyson.             JANE JAMISON."

"Radnor, Pa., 30 August, 1913."

The other paper, which is in the form of a letter to her
friend, is corroborative of the requests in the first paper,
and makes reference to an additional request to her
brother John concerning the business in Philadelphia,
which we understand admittedly belonged to her brother
Samuel. The paper is as follows:

"Radnor, Pa., 30 August, 1913.

"Gertrude I have asked John if he will not allow Wil-
liam Calverly and William Fleming to have the business
let them have the money in it, 150 and 150½ Dock Street
and 3 and 5 South Water Street.

"My Pittsburgh bonds to Ida Jamison.

"The interest on my Market stock valued at $5,650 to
Martha Young if her mother outlives her to her then at
the death of her mother or if she outlives her mother
at her death the principal to go to The College of Phy-
sicians for a fund to be known as The James Tyson Fund
for the buying of books.

"Interest on my Commercial Trust stock to Lucy Nice,
1803 North 7th Street.

"Interest on my American Gas to Emma Harrar.

"To give my College Club bonds to Frances Tyson.

"To see that Lucy Nice is always comfortable.

"My money at 10th & Walnut is yours.

"JANE JAMISON, Radnor, Pa.

"30th August, 1913."

It is evident that when Jane Jamison signed these
writings in question she fully expected to survive her
brother Samuel, and that his estate would, under the
terms of his will, come to her, and would then pass under
the terms of her own will, and that the income of the
whole would go to her brother John for life. It was to

John, therefore, that she addressed her request that he would give certain specific securities, and the income from others, to certain persons whom she named. In one of her notes to her friend she states that she has asked John "if he will not allow" the disposition she has suggested to take effect. In another note to this friend, dated the day before, she says, "as John is the only heir I think he will grant my requests if you let him know how much I wish the things given to the different persons." But the event which she expected did not happen. She did not survive her brother Samuel. He survived her, and, under the first paragraph of her will, her entire estate went to him, without qualification or limitation. The writings were evidently not intended to apply at all to the situation which actually arose. In one of them she speaks of her request to give away a business which admittedly belonged to Samuel and in which she could have had no interest, unless she first acquired it through the will of Samuel. Three of these writings bore the same date, and it is not possible to tell the order in which they were signed, but in one of them she states "the terms of my will stand." Doubtless she had then in mind the contingency of her surviving her brother, but in any event it showed her intention that the will should stand. If it did, then clearly, as her brother Samuel was living when the will took effect, her entire estate became vested in him, and her brother John had no interest in or control over it. But aside from this the words employed in the writings are expressive merely of desire and recommendation, and are, therefore, merely precatory, and not testamentary. She makes no disposition of her estate herself in the manner suggested, but knowing that if her brother John takes under the terms of her will, the income from all her property will go to him absolutely during his life, she requests that he will make certain gifts to the parties named, out of that which is given to him. In other words, having made a disposition of her property she expresses a desire that

the legatee shall make a certain use of her bounty. Nothing could be more clearly precatory. Under any aspect from which the case may be viewed, the court below was right in refusing to regard the papers in question as testamentary.

The decree is affirmed, and these appeals are dismissed at the cost of appellants.